UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NJOY, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>IMIRACLE (HK) LTD., *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 24-cv-0397-BAS-JLB<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO SERVE DEFENDANT UNDER RULE 4(f)(3) (ECF No. 24)** |

Plaintiff NJOY, LLC moves, *ex parte*, for an order authorizing alternative service using email pursuant to Federal Rule of Civil Procedure 4(f)(3) to serve Defendants Imiracle (HK) Limited; Shenzhen iMiracle Technology Co., Ltd.; Shenzhen Weiboli Technology Co. Ltd.; Vapeonly Technology Co. Ltd.; Guangdong Qisitech Co, Ltd.; and Shenzhen Han Technology Co., Ltd. (collectively the "Chinese Defendants"). (ECF No. 24.) For the reasons herein, the Court **DENIES** Plaintiff's motion. (ECF No. 24.)

I.　BACKGROUND

Plaintiff commenced this action on February 28, 2024. (Compl., ECF No. 1.) Plaintiff alleges that the Chinese Defendants manufacture, market, and distribute flavored disposable vapor devices ("e-cigarettes") in California and the United States. (ECF No. 24 at 3.) Plaintiff alleges California has banned flavored tobacco products and the U.S.

Food and Drug Administration ("FDA") has not approved the sale of Defendants' e-cigarettes. (Compl. at 10–15.) Plaintiff claims violations of California Unfair Competition Law and the Prevent All Cigarette Trafficking Act and seeks injunctive relief, restitution, and unlawfully obtained profits. (*Id.* at 32–38.)

On March 21, 2024, Plaintiff filed the instant motion seeking leave to effect alternative service upon the Chinese Defendants by email pursuant to Rule 4(f)(3). (ECF No. 24.) Plaintiff has begun the process for formal service under the Hague Convention but notes the process will take at least six months and potentially much longer. (*Id.* at 1.) Citing delay, Plaintiff seeks permission to serve the Chinese Defendants by emailing the public communication email addresses on the Chinese Defendants' websites or emailing the Chinese Defendants' counsels of record in other U.S. proceedings. (*Id.* at 2.)

## II. DISCUSSION

Under Rule 4(h)(2), if a corporation is served outside any judicial district of the United States, it must be served "in any manner prescribed by Rule 4(f) for serving an individual, except under (f)(2)(C)(i)." Rule 4(f) permits service on an individual, other than a minor, an incompetent person, or a person whose waiver has been filed, at a place not within any judicial district of the United States, by one of three means. *See* Fed. R. Civ. P. 4(f)(1)–(3). Of the methods Rule 4(f) permits, it "does not denote any hierarchy or preference of one method of service over another." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002).

Plaintiff seeks to effect service under Rule 4(f)(3) which permits service on an individual located abroad "by other means not prohibited by international agreement, as the court orders." *Cf. Rio Props.*, 284 F.3d at 1015 n.4 (9th Cir. 2002) ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention, referenced in Rule 4(f)(1)."). The Defendants here are located in China, which is a signatory to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters

(the "Hague Convention" or the "Convention"), *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

The Hague Convention aims to "simplify, standardize, and generally improve the process of serving documents abroad" by specifying approved methods of service. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017). Service under the Hague Convention is mandatory for all "civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, Art. 1. Because the United States is a signatory, by virtue of the Supremacy Clause, the Supreme Court has found the Hague Convention is mandatory federal law and preempts inconsistent methods of service prescribed by state law where the Convention applies. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (citing *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court,* 482 U.S. 522, 534 n. 15 (1987)). Under the terms of the Hague Convention, service abroad must usually be performed by a receiving county's "Central Authority" who effects service in the member country. *See Brockmeyer v. May*, 373 F.3d 798, 801 (9th Cir. 2004). This is commonly referred to as "Hague service."

There is some dispute among district courts as to whether the Hague Convention proscribes service via email through Rule 4(f)(3) and whether service via email may still be permitted for entities located in China. The Ninth Circuit has not yet addressed either question. First, for when a manner of service does not fall into any of the categories mentioned in the Hague Convention, courts disagree as to whether those methods are prohibited. *See Media Trademark & Licensing Ltd. v. COINGEEKLTD.COM*, No. CV-21-00214-PHX-DWL, 2021 WL 2895289, at *4 (D. Ariz. July 9, 2021) (gathering cases). Service via electronic means is not mentioned in the Convention, which was drafted in the 1960s. Some courts hold unless the Convention explicitly prohibits a method of service, those means "are not prohibited by international agreement" under Rule 4(f)(3). *See, e.g.*, *Rubie's Costume Co. v. Yiwu Hua Hao Toys Co.*, 2019 WL 6310564, at *2 (W.D. Wash. Nov. 25, 2019); *Karsten Mfg. Corp. v. Store*, No. 18-61624-CIV, 2018 WL

8060707, at *1 (S.D. Fla. July 26, 2018). Because the Hague Convention does not describe service via email, courts are then free to order alternative service.

In contrast, other courts find the Hague Convention enables only certain methods of service while prohibiting all others. These courts find the positive language of the Convention necessarily precludes other, non-enumerated methods of service. *See, e.g.*, *Facebook Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 983–87 (N.D. Cal. 2020). In particular, these courts emphasize the Convention's text demands it "*shall* apply in all cases, in civil or commercial matters" such that methods of service outside the Convention are expressly prohibited. *See Lonati, S.P.A. v. Soxnet, Inc.*, No. CV 20-5539-GW-JPRX, 2021 WL 9839477, at *3 (C.D. Cal. Sept. 9, 2021). The Court finds this line of reasoning persuasive. The Hague Convention identified particular, permissible methods of service. It would run contrary to the text and thrust of the Convention to require signatories to affirmatively object to all other, possible methods of service not enumerated by the Convention.

Second, some courts have interpreted the Hague Convention's section on service by mail to include service by email. *Compare Agha v. Jacobs*, No. C-07-1800-RS, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) (holding email service was prohibited because Germany objected to service by mail under Article 10 of the Hague Convention and service by email is not distinguishable from service by mail) *with Rubie's Costume*, 2019 WL 6310564, at *3 (collecting cases where email service was not precluded by China's objection to Article 10 of the Hague Convention). However, even if this provision included email, it is ultimately irrelevant here because China objected to service of process by mail. *See Facebook*, 480 F. Supp. 3d at 983. As follows, service by email to entities in China appears proscribed by the Hague Convention.

Plaintiff must then pursue Hague service to the extent possible. While Plaintiff has retained a translation service and emailed copies of the complaint to the Chinese Defendants' email addresses, Plaintiff has not tried and failed to effect Hague service. (ECF No. 24-1 at 6–8.) Plaintiff insists service by email would reasonably apprise the

interested parties of the action, but email service does not meet Plaintiff's requirements under the Hague Convention. (*Id.* at 10.) While Hague service may take additional time and be cumbersome, it is mandatory. (*Id.* at 1.) Accordingly, the Court denies Plaintiff's motion to effect alternative service.

The Court, however, is mindful of the difficulties that can occur when serving parties outside of the United States. The Hague Convention recognizes that "the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all of the following conditions are fulfilled": (1) the document was transmitted by one of the methods described by the Convention; (2) a period of no less than six months, as deemed adequate by the judge, has elapsed since the document was transmitted; and (3) no certificate of any kind has been received, although the transmitting party has made every reasonable effort to obtain it through the authorities of the foreign state. Hague Convention, Art. 15. *See also Media Trademark*, 2021 WL 2895289, at *6. Further, the Hague Convention does not apply "where the address of the person to be served with the document is not known." *Id.*, Art. 1. If any of these exceptions emerge, it may allow for alternative means of service under Rule 4(f)(3). Plaintiff, however, must first attempt to serve the Chinese Defendants through Hague service or through other permitted service channels. Therefore, resorting to alternative means of service under Rule 4(f)(3) is premature.

## III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's ex parte application to effect service upon the Chinese Defendants through email under Rule 4(f)(3) without prejudice. Plaintiff is **ORDERED** to provide status updates to the Court every 90 days on its progress in effecting Hague Service.

**IT IS SO ORDERED.**

**DATED: April 9, 2024**

Hon. Cynthia Bashant
United States District Judge