

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

NJOY, LLC,

                Plaintiff,

    v.

IMIRACLE (HK) LTD., *et al.*,

                Defendants.

Case No. 24-cv-00397-BAS-JLB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 30, 45, 48, 81)**

    This case arises from Plaintiff NJOY, LLC's action against multiple defendants involved in the manufacture, distribution, and sale of flavored disposable vaping devices ("FDVs"). Defendants in this case can be categorized into three principal groups. The first group consists of brick-and-mortar retailers, which include Aroma Avenue Vape Shop, Cigarettes N More, Cloudhaven Vapors, Inc., and Z Vapor Room ("Brick-and-Mortar Retailer Defendants"). The second group includes online retailers, namely Empire Imports LLC; SV3 LLC, doing business as Mi-One Brands; and Thesy, LLC, doing business as Element Vape ("Online Retailer Defendants"). Finally, the third group comprises foreign entities based in China, which include Imiracle (HK) Limited; Shenzhen iMiracle Technology Co., Ltd.; Shenzhen Weiboli Technology Co. Ltd.; Vapeonly Technology Co.

- 1 -

24cv0397

Ltd.; Guangdong Qisitech Co., Ltd.; and Shenzhen Han Technology Co., Ltd. ("Manufacturer Defendants").

NJOY initiated the litigation on February 28, 2024, asserting claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., and the federal Prevent All Cigarette Trafficking Act of 2009 ("PACT Act"), 15 U.S.C. § 375 et seq. (Compl. ¶ 1, ECF No. 1.) NJOY collectively accuses Defendants of violating the UCL. (*Id.* ¶ 119.) Additionally, NJOY alleges the Manufacturer and Online Retailer Defendants ("PACT Act Defendants") violated the PACT Act. (*Id.* ¶ 131.) The central thrust of NJOY's Complaint is that the unlawful distribution and sale of FDVs infringes on NJOY's market for legally authorized tobacco-flavored e-cigarette products, causing substantial economic harm by diverting sales and eroding market share. (*See id.* ¶¶ 1–13.)

Presently before the Court are several motions to dismiss the Complaint, including: (1) the Motion to Dismiss filed by Defendants SV3 LLC and Thesy, LLC (ECF No. 30); (2) the Motion to Dismiss filed by Brick-and-Mortar Retailer Defendants (ECF No. 45); (3) the Motion to Dismiss filed by Defendant Empire Imports LLC (ECF No. 48); and (4) the Motion to Dismiss filed by Defendant Shenzhen iMiracle Technology Co., Ltd. (ECF No. 81) and joined by Imiracle (HK) Limited (ECF No. 93). These groups of defendants ("Defendants") seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and, alternatively, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1 (d)(1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions to Dismiss.

## BACKGROUND

NJOY is a manufacturer and distributor of tobacco-flavored electronic nicotine delivery systems ("ENDS"), including its two brands of e-cigarettes, NJOY Daily and NJOY ACE. (Compl. ¶ 9.) The Food and Drug Administration ("FDA") has granted market authorization for NJOY's tobacco-flavored products following a rigorous scientific

review process.  (*Id.* ¶ 10.)  In contrast, Defendants manufacture, distribute, and sell FDVs—a subset of ENDS distinguished by their flavored content and disposable nature—including some of the most popular brands on the market, such as Elf Bar, EB Create, EB Design, Lost Mary, Funky Republic, and Funky Lands ("Elf Bar Products").  (*Id.* ¶¶ 3, 77.) Elf Bar Products lack the required FDA premarket authorization and are banned for in-person retail sale under California's flavor ban, as outlined in Cal. Health & Safety Code § 104559.5.  (*Id.* ¶ 4.)

NJOY alleges that Defendants' conduct violates the UCL under its "unlawful," "unfair," and "fraudulent" prongs.  (*Id.* ¶¶ 119–28.)  NJOY contends Defendants not only violate the UCL through their own conduct, but also "engage in unlawful conduct under the UCL by assisting, aiding, abetting, and supporting the unlawful conduct of other Defendants and entities . . . ."  (*Id.* ¶ 123.)  Furthermore, NJOY asserts that PACT Act Defendants have also flouted the PACT Act by failing to comply with multiple federal shipping and packaging, tax registration, age verification, and reporting requirements applicable to the sale of tobacco products.  (*Id.* ¶¶ 130–35.)

NJOY avers that Manufacturer Defendants knowingly export Elf Bar Products to the United States, despite repeated warnings from the FDA that these products lack the necessary FDA premarket authorization and are therefore adulterated and misbranded under federal law.  (*Id.* ¶¶ 4, 66–69.)  NJOY contends these products are then sold to California consumers through physical retail outlets operated by Brick-and-Mortar Retailer Defendants and online platforms operated by Online Retailer Defendants.  (*Id.* ¶¶ 80–81, 96–108.)  Moreover, NJOY asserts that Defendants' practices place it at a competitive disadvantage, creating an uneven playing field by enabling the sale of non-compliant products.  (*Id.* ¶ 127.) NJOY alleges that these unlawful sales harm its position by diverting customers away from its FDA-approved, tobacco-flavored alternatives, undermining its investments in regulatory compliance, and eroding its market share and revenue.  (*Id.* ¶¶ 11, 13, 71–76.)

24cv0397

Defendants filed motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), asserting that NJOY lacks Article III standing and has not adequately pleaded claims under the UCL or the PACT Act.  (ECF Nos. 30, 45, 48, 81.)  Additionally, the Court requested supplemental briefing on whether NJOY's claims are preempted on the grounds that they attempt to privately enforce the Federal Food, Drug and Cosmetic Act ("FDCA").  (ECF No. 54.)

## MOTION TO DISMISS UNDER RULE 12(b)(1)

### I.    Legal Standard

Article III, Section 2 of the Constitution limits federal courts to hearing "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016).  This limitation means the plaintiff must have standing to sue.  *Id.* at 338.  To establish standing, a plaintiff must meet an "irreducible constitutional minimum" that includes three essential elements: injury in fact, causation, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  An injury in fact is an invasion of a legally protected interest that is both (1) concrete and particularized and (2) actual or imminent, as opposed to conjectural or hypothetical.  *Id.* at 560.  Causation is established as long as the injury is "fairly traceable to the defendant's allegedly unlawful conduct."  *Allen v. Wright*, 468 U.S. 737, 750–51 (1984).  Finally, redressability is met if it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Lujan*, 504 U.S. at 561.  "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.'"  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561).

Under Rule 12(b)(1), a party may move to dismiss a claim based on lack of subject matter jurisdiction, including the absence of standing.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010).  A Rule 12(b)(1) challenge to jurisdiction may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1036, 1039 (9th Cir. 2004).

24cv0397

A defendant may challenge jurisdiction facially by arguing the allegations in the complaint itself are insufficient to invoke federal jurisdiction. *Id*. The presumption of truthfulness attaches to the allegations in the complaint, and the court is limited to the four corners of the pleading in determining whether it has jurisdiction over the matter. *Thornhill Publ'g Co. v. Gen. Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979). To survive a Rule 12(b)(1) facial challenge, "the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual attack, the court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Once a defendant challenges the truth of a plaintiff's factual allegations, the plaintiff bears the burden of substantiating jurisdictional allegations with competent proof. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024).

Nonetheless, while the court may consider evidence outside of the pleadings, a "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). When the "jurisdictional issues are 'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.'" *Bowen*, 118 F.4th at 1143 (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014)).

24cv0397

## II.    Analysis

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(1).[1]  In doing so, they present both a facial and factual challenge to the Court's subject matter jurisdiction. To resolve Defendants' arguments, the Court must also address whether it is appropriate to take judicial notice of certain assertions from NJOY's prior lawsuit—*NJOY, LLC v. iMiracle (HK) Limited*, No. CV 23-08798 TJH (SSCx) (C.D. Cal. filed Jan. 18, 2024) (*NJOY I*).  (Mot. 10:3–5; Reply 5:18–20.)

### A.    Judicial Notice

A court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  "Courts may take judicial notice of their own records, and may also take judicial notice of other court proceedings if they 'directly relate to matters before the court.'"  *Stewart v. Kodiak Cakes, LLC*, 568 F. Supp. 3d 1056, 1063 (S.D. Cal. 2021) (quoting *Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1136–37 (S.D. Cal. 2006)).  However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  "[W]hen resolving disputes, courts may 'not take judicial notice of court documents provided for the truth of the facts asserted therein' when such documents contain 'facts essential to support a contention in a cause then before it.'"  *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) (quoting *BP West Coast Prods. v. May*, 347 F. Supp. 2d 898, 901 (D. Nev. 2004)).  A court may thus take judicial notice of matters of

---

[1] Defendants' motions present identical arguments. For clarity, the Court addresses them collectively, treating them as a single motion and referencing the initial Motion to Dismiss filed by SV3 LLC and Thesy, LLC. (Mot., ECF No. 30.) Similarly, subsequent briefs are addressed by referencing the first respective filings: NJOY's Opposition (Opp'n., ECF No. 44) and Defendants SV3 LLC and Thesy, LLC's Reply (Reply, ECF No. 47).

24cv0397

public record, but not the truth of facts within those records that are subject to reasonable dispute. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

In addressing Defendants' motions, the Court finds it necessary to consider judicial notice of two filings and their related assertions. First, Defendants point to NJOY's pleading in *NJOY I*, where it alleged that "California consumers who want to use an FDV have a myriad of brands from which to choose other than the Elf Bar Products, including brands like Hyde, Esco Bar, Breeze, Lava, HQD, Loon, Fume, Mr. Fog, RandM, and SWFT." (Mot. at 11:18–21.) Consequently, Defendants contend that even if Elf Bar Products were banned, "Elf Bar FDV users would switch to another brand of FDV rather than a tobacco-flavored vaping product." (*Id.* at 12:1–2.)

Second, Defendants point to assertions NJOY made in its motion for a preliminary injunction in *NJOY I*. Defendants contend NJOY asked "the *NJOY I* court to enter a preliminary injunction prohibiting the sale of five . . . non-Elf Bar FDV brands—Hyde, Esco Bar, Puff Bar, Hyppe, and SWFT." (*Id.* at 12:6–8.) Defendants note that "Plaintiff said that the continued availability of the non-Elf Bar FDV brands would 'irreparably harm' Plaintiff in that consumers prefer those FDV brands to Plaintiff's tobacco-flavored vaping products." (*Id.* at 12:8–11.) Defendants use this assertion to suggest that NJOY faces competitive harm from multiple sources, further undermining the notion that users of Elf Bar Products would shift to NJOY's offerings: "The fact that Plaintiff sought such an extraordinary remedy with respect to Hyde, Esco Bar, Puff Bar, Hyppe, and SWFT brand FDVs just four months ago belies any allegation that Elf Bar FDV users would flock to Plaintiff's tobacco flavored vaping products if the Court enjoins the sale of Elf Bar FDVs." (*Id.* at 12:12–15.)

Ultimately, Defendants ask the Court to accept as fact a central, disputed issue in this case—whether consumers would switch to NJOY's products if Defendants were enjoined from selling FDVs. Defendants rely on statements from prior *NJOY I* filings as evidence that consumers would not switch to NJOY's offerings, even if an injunction were issued. NJOY, by contrast, argues that its alleged harms—such as diminished market share

and lost sales from consumers turning to Elf Bar Products—would indeed be remedied if Defendants were enjoined from continuing their activities. (Compl. ¶¶ 127–29.)

Therefore, the Court declines to take judicial notice of the truth of any admissions or allegations in the *NJOY I* complaint for the purpose of establishing how consumers would react to an injunction against Elf Bar Products because this is subject to reasonable dispute.

### B. Facial Challenge

Defendants contend "Plaintiff does not plausibly allege that the injunctive relief it seeks for its UCL claim is likely to redress its alleged injury[,]" thus presenting a facial challenge to NJOY's standing. (Mot. 11:7–8.) Specifically, Defendants argue that NJOY's allegations fail to establish that there is a "substantial likelihood" that the injunction would cause Elf Bar FDV users to switch to NJOY's tobacco flavored vaping products. (*Id.* at 13:3.) Rather, "common sense says that Elf Bar FDV users are far more likely to switch to another FDV brand if Elf Bar FDVs become unavailable than they are to switch to Plaintiff's tobacco flavored vapor products." (Reply 3:19–21.)

As such, the central issue for this analysis is whether NJOY's alleged losses in sales or market share are likely to be remedied by a favorable court decision. To establish standing, a plaintiff must demonstrate the relief it seeks will "likely" remediate the injury upon which standing is premised. *Lujan*, 504 U.S. at 560–61. A plaintiff's burden to show redressability is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). A plaintiff must allege that it is likely that the injury resulting from defendants' conduct will be redressed by a favorable court decision. *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 869 (9th Cir. 2002).

Here, NJOY alleges that consumers purchase Elf Bar Products at the expense of its tobacco-flavored products, leading to lost sales, diminished profits, and other economic harms. (Compl. ¶ 13.) According to NJOY, "[t]his harm is the direct result of the Defendants' unlawful, unfair, and fraudulent conduct—without which Elf Bar Products could not be sold—and Plaintiff will continue to suffer harm without relief from this

24cv0397

Court." (*Id.*)   NJOY supports this claim by noting that the rise in Elf Bar Products' sales and market share has coincided with a sharp drop in the sales and market share of tobacco-flavored vapor products like NJOY Daily and NJOY ACE. (*Id.* ¶ 11.)  Accordingly, NJOY contends enjoining the sale of Elf Bar Products would redress this harm by preventing further loss of market share and alleviate the unfair competition posed by Elf Bar Products: "[t]he unlawful, unfair, and fraudulent business acts and practices of Defendants continue to harm Plaintiff because Defendants are currently engaging in these acts and practices, which are likely to continue unless and until this Court provides relief." (*Id.* ¶ 129.)

As such, the Court finds that NJOY has sufficiently pleaded a likelihood that a favorable decision would redress its alleged injury.  NJOY's allegations appear plausible on the face of the pleadings, satisfying the requirement at this stage of the litigation.

## C.    Factual Challenge

Defendants also rely on evidence outside the pleadings to contest the likelihood of redress. (Mot. 12:16–13:12.)  This constitutes a factual challenge to NJOY's Article III standing.  However, the dispute they raise goes to an element of the merits of the case that is intertwined with the jurisdictional question; therefore, it is improper to resolve the issue of standing at the motion to dismiss stage.

In addressing Defendants' arguments, the Court must consider evidence beyond the pleadings, including the Declaration of R. Garrison Harvey, submitted by NJOY in support of its motion for a preliminary injunction against Brick-and-Mortar Retailer Defendants. Defendants point out that, according to Mr. Harvey, "less than 8% of vaping product users who exclusively use tobacco-flavored vaping products use Plaintiff's products." (*Id.* at 12:17–19.)  Defendants cite this proposition to cast doubt on whether NJOY would benefit from a ban on Elf Bar Products from users turning to its tobacco-flavored vaping products.

Moreover, Defendants also note that while Mr. Harvey opines that the presence of "FDVs in the market" has led to "an estimated $16.1 million to $147.5 million annual lost sales at retail to NJOY," his analysis projects increased sales assuming all FDVs are cleared from the market, rather than focusing exclusively on a ban of Elf Bar Products. (*Id.* at 13

n.23.)  Defendants emphasize, "Mr. Harvey opines that clearing the market of *all* FDVs would increase annual sales of Plaintiff's tobacco-flavored vaping products, but he says nothing about what would happen to annual sales of Plaintiff's tobacco-flavored vaping products if only Elf Bar FDVs were cleared from the market."  (*Id.* at 13:7–10.)

Lastly, Defendants further reference a report by the Centers for Disease Control and Prevention, *Morbidity & Mortality Weekly Report, E-cigarette Unit Sales by Product & Flavor Type & Top-Selling Brands, U.S., 2020-2022* (June 23, 2023), which was submitted by NJOY in support of its preliminary injunction motion.  (*Id.* at 13 n.22.)  According to this report, NJOY's products rank behind two other major e-cigarette brands in the United States, further casting doubt on NJOY's claim that a ban on Elf Bar Products alone would materially benefit its market position.

Nevertheless, in substantiating its allegations, NJOY disputes the Defendants' interpretation of the findings provided by NJOY's expert statistician: "the record does not show a lack of standing; it shows the opposite."  (Opp'n. 10:14–15.)  NJOY contends that "Defendants [] rely on the Declaration of R. Garrison Harvey that Plaintiff submitted in support of its motion for a preliminary injunction against [Brick-and-Mortar Retailer Defendants] . . . [b]ut rather than suggest a lack of standing, Mr. Harvey's Declaration shows that Plaintiff has been and continues to be harmed by losing sales and market share from sales of Elf Bar Products."  (*Id.* at 10:18–11:2.)  NJOY reiterates Mr. Harvey's conclusion that "the availability of FDVs is associated with NJOY lost sales" and emphasizes that "there is a reliable basis to further illustrate that the continued availability of FDVs, *and Defendant's FDVs*, would be associated with NJOY lost sales."  (*Id.* at 11:2–5.)  Furthermore, NJOY argues that Defendants' reliance on extrinsic evidence is inappropriate at the motion to dismiss stage when the jurisdictional question is closely tied to the merits of the case.  (*Id.* at 9:15–10:11.)

Ultimately, the issue of redressability—whether enjoining the sale of Elf Bar Products would likely restore NJOY's lost sales or market share—depends on resolving factual issues central to an element of the merits of NJOY's UCL claim—whether it indeed

has "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. In other words, the redressability analysis hinges on a showing that NJOY's alleged losses in market share or sales can be attributed to the unfair competitive conduct of Defendants. Should NJOY be unable to substantiate a causal link between its economic harm and Defendants' actions, an injunction would be inadequate to provide relief. Conversely, if NJOY can establish that its diminished sales or market position resulted from Defendants' practices, an injunction could reasonably be expected to remedy or mitigate the harm. Given that "the [standing] issue and substantive issues are so intertwined," resolving "genuinely disputed facts is inappropriate" at the motion to dismiss stage. *Safe Air for Everyone*, 373 F.3d at 1039.

Thus, the Court must assess Defendants' motion as it would a motion for summary judgment, and "leave the resolution of material factual disputes [regarding Article III standing] to the trier of fact." *Leite*, 749 F.3d at 1122 n.3. At this stage, "the court must . . . construe disputed issues of fact in favor of the nonmoving party." *Bowen*, 118 F.4th at 1139. Applying that standard here, NJOY has adequately established redressability for purposes of Article III standing.

### D.    Restitution or Disgorgement

NJOY seeks restitution for Defendants' alleged unlawful, unfair, and fraudulent conduct under the UCL. (Compl. ¶ 128.) The Complaint also demands disgorgement of profits obtained through these wrongful activities. (*Id*.) Defendants argue that the Court should dismiss NJOY's claim under Federal Rule of Civil Procedure 12(b)(1), asserting that such relief is not available under the UCL. (Mot. 13:13–14:6.)

However, Defendants' assertion that NJOY lacks Article III standing based on the potential unavailability of restitution or disgorgement under the UCL is misplaced. The Court recognizes that "[t]here is a difference between statutory standing and constitutional standing." *Head v. Wilkie*, 936 F.3d 1007, 1012 n.4 (9th Cir. 2019). To bring a UCL claim, a plaintiff must have UCL standing, which is distinct from Article III standing. *See Ehret v. Uber Tech*., Inc., 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) ("[A] federal plaintiff's

[Article III] 'injury in fact' may be intangible and need not involve lost money or property. . . a UCL plaintiff's 'injury in fact' [must] specifically involve 'lost money or property.'"). Moreover, "[s]tatutory standing under the UCL . . . is assessed under the Rule 12(b)(6) standard." *Souter v. Edgewell Personal Care Co*., 542 F. Supp. 3d 1083, 1090 (S.D. Cal. 2021); s*ee also Vaughn v. Bay Env't Mgmt., Inc*., 567 F.3d 1021, 1024 (9th Cir. 2009) ("[A] dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction.").

Thus, to the extent that Defendants argue NJOY lacks Article III standing because it cannot obtain restitution or disgorgement under the UCL, the Court rejects this argument. Issues concerning entitlement to specific remedies are properly raised under Rule 12(b)(6), which evaluates the sufficiency of the claim rather than jurisdiction.

### E.    Injury in Fact

PACT Act Defendants argue that although NJOY claims statutory standing to bring a PACT Act claim based on holding a federal tobacco permit, "statutory standing does not automatically confer Article III standing." (Mot. 14:14.)  Specifically, they contend NJOY has not sufficiently alleged injury in fact resulting from the alleged violations of the PACT Act.  (*Id*. at 14:14–15:16.)

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).  Further, courts accept "a chain of inferences showing how defendant's [conduct] could harm plaintiff's business" to establish injury in fact.  *TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820, 825 (9th Cir. 2011).  In a lawsuit brought by a plaintiff against a competitor, claims that permit an inference of impending loss of profits due to the competitor's wrongful actions suffice to establish an injury in fact.  *See Ass'n of Data Processing Servs. Orgs., Inc. v. Camp*, 397 U.S. 150, 152–53 (1970) (holding "[t]here can be no doubt" that plaintiffs "in a competitor's suit" satisfied the injury in fact requirement where they alleged "some future loss of profits").

Here, the Court finds NJOY's allegations sufficient to establish the necessary chain of inferences showing how PACT Act Defendants' violations may harm NJOY's business and future profits. NJOY asserts that it sells and distributes vapor products in direct competition with Elf Bar Products for adult consumers. (Compl. ¶¶ 9, 13.) NJOY further contends that, while it has invested significantly in regulatory compliance for its product sales, PACT Act Defendants fail to adhere to PACT Act requirements when selling Elf Bar Products. (*Id.* ¶¶ 56, 133.) By circumventing these compliance costs, NJOY alleges, Defendants gain an unfair competitive advantage, allowing them to ultimately erode NJOY's market share and sales. (*Id.* ¶¶ 71, 75.) NJOY contends that "Defendants' [] conduct placed NJOY at a competitive disadvantage because it induced lawful, adult consumers to buy unlawful and misbranded Elf Bar Products, rather than legal products such as those marketed by NJOY." (*Id.* ¶ 127.) Moreover, NJOY argues that "[a]s a direct and proximate result of the Defendants' acts of unfair competition, Defendants have wrongfully taken sales and profits from Plaintiff and deprived Plaintiff of the benefit of its substantial investment of time, effort, and resources in, among other things, developing and marketing NJOY products." (*Id.* ¶ 128.)

PACT Act Defendants counter that NJOY did not explicitly plead this "compliance" costs injury theory in its Complaint. (Reply 7:10–12.) And that NJOY has not alleged that it incurs PACT Act compliance costs for online sales, nor that enforcing PACT Act compliance on Defendants would lead to increased sales for NJOY by impacting Defendants' prices or consumer behavior. (*Id.* at 7:14–8:3.)

The Court finds Defendants' arguments unpersuasive, despite their contention that NJOY failed to precisely define its "compliance" costs theory. Even without the exact articulation Defendants demand, NJOY's Complaint sufficiently lays out a chain of inferences to establish injury in fact. Indeed, when a competitor gains an unfair advantage by sidestepping regulatory obligations, it is entirely plausible for a court to conclude that economic harm exists for entities competing in the same market while adhering to the rules. In this case, NJOY has sufficiently alleged in its Complaint that PACT Act Defendants'

- 13 -

unfair competitive practices—such as non-compliance with PACT Act requirements—have undermined NJOY's market position, leading to lost sales and market share as well as impending loss of profits. These allegations collectively establish an injury in fact under Article III.

In sum, the Rule 12(b)(1) Motion to Dismiss is **DENIED,** and the Court finds NJOY has sufficiently alleged Article III standing.

## MOTION TO DISMISS UNDER RULE 12(b)(6)

**I.    Legal Standard**

**A.    Plausibility**

Under Rule 12(b)(6), the court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not accept conclusory allegations as true; rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*,

550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged enough facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[ ] [its] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

When a court grants a motion to dismiss under Rule 12(b)(6) for failure to state a claim, it must also decide whether to grant leave to amend. Under Rule 15(a)(2), granting leave to amend rests within the trial court's sound discretion. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). The Ninth Circuit has held that leave to amend should be freely granted. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

## B. Heightened Standard for Fraud

In analyzing the sufficiency of a claim for fraud, courts apply Rule 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "Rule 9(b) demands that the circumstances constituting the alleged fraud be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* at 1124 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). This means that allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Rule 9(b) applies in cases regardless of the basis for subject matter jurisdiction or whether the substantive law in question is derived from state or federal authority. *See Kearns*, 567 F.3d at 1125

24cv0397

(holding that Rule 9(b) applies to claims brought under California consumer protection statutes).

## II.    Analysis

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6).  Furthermore, Online Retailer Defendants, along with Defendants Shenzhen iMiracle Technology Co., Ltd. and Imiracle (HK) Limited, contend that, insofar as NJOY bases any of its claims on alleged violations of the FDCA, federal law preempts those claims.  (Mot. 20:9–12; ECF No. 63 at 2:3–5; ECF No. 81-1 at 24:9–13; ECF No. 93 ¶¶ 5–6.)  More specifically, they argue that "federal law preempts Plaintiff's [UCL] claims to the extent those claims are based on the Elf Bar FDVs' labels' inclusion of . . . federally required statements." (Mot. 19 n.38.)  Therefore, the Court first determines whether NJOY's claims are preempted before addressing the plausibility of the remaining claims.

### A.    Preemption

The concept of federal preemption of state laws is grounded in the Supremacy Clause of the Constitution.  Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.  Thus, since *M'Culloch v. Maryland*, 17 U.S. 316 (1819), the federal judicial system has held "that state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

"The party contending that a claim is preempted bears the burden of establishing preemption." *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1193 (S.D. Cal. 2021) (citation omitted).  "Express preemption exists when a statute explicitly addresses preemption." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020).  Courts apply a presumption against preemption because the "historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 107 (2000) (citation omitted).

"Congress may also preempt state law implicitly," but implied preemption will only be found where there is sufficient evidence of congressional intent to preempt that overcomes the "high threshold" of the strong presumption against preemption of state law. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*, 959 F.3d 1201, 1211 (9th Cir. 2020).  That implied preemption may be found only where Congress' intent was to occupy the "field" of regulating the subject matter or where state law "conflicts" with the federal regulatory scheme, and compliance with both is impossible or raises an obstacle to the regulatory objective of Congress.  *Id.* at 1212.

Ultimately, the argument that federal law preempts portions of NJOY's UCL claim requires an examination of the regulatory framework established by the Family Smoking Prevention and Tobacco Control Act of 2009 ("TCA"), 21 U.S.C. § 387 et seq., to assess the scope of federal preemption and its impact on NJOY's UCL claim.

### 1.    Statutory Scheme

The TCA provides the FDA with comprehensive regulatory powers over "tobacco products."  *Id.*  In 2016, the FDA adopted the "Deeming Rule."  21 C.F.R. § 1143.1.  The Deeming Rule provided that e-cigarettes and ENDS, including FDVs, would be treated as "tobacco products" under the TCA and thus would be subject to the TCA and regulated by the FDA. 81 Fed. Reg. 28973 (2016).  Nevertheless, despite the extensive regulatory authority granted to the FDA, the TCA and its accompanying regulations specifically allow certain areas for state actions and related claims under state law.  The relevant statutory provision, 21 U.S.C. § 387p, titled "Preservation of State and local authority," provides as follows:

(a)(2) Preemption of certain State and local requirements

(A) In general

No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any

- 17 -

24cv0397

requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.

(B) Exception

Subparagraph (A) does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products.

## 2.    Analysis

NJOY argues that its UCL and PACT Act claims are not based on private enforcement of the FDCA. (ECF No. 61 at 1:6–8.) NJOY clarifies that, while the Complaint references the FDA's regulatory authority and actions regarding Elf Bar Products, as well as the applicability of the FDCA to these products, these references provide context only, and its claims do not rely on proving any violation of a FDCA or FDA requirement. (*Id.* at 1:12–17.)

Online Retailer Defendants, along with Defendants Shenzhen iMiracle Technology Co., Ltd. and Imiracle (HK) Limited, argue that portions of all three prongs of NJOY's UCL claim are preempted because they constitute an indirect attempt to enforce the FDCA through private state law action, which is precluded by 21 U.S.C. § 337(a), as it grants the FDA exclusive enforcement authority. (ECF No. 63 at 2:3–5; ECF No. 81-1 at 24:7–13; ECF No. 93 ¶¶ 5–6.) They argue that "[t]he FDCA preempts . . . NJOY's UCL claim to the extent that [it] is based on NJOY's theory that the Online Retailer Defendants (including Empire) had an obligation to disclose information about FDA warning letters relating to Elf Bar FDVs." (ECF No. 63 at 5:13–16.) These Defendants assert this argument for both the "unlawful" and "fraudulent" prongs, contending that NJOY's claim under these prongs hinge on the same allegation: that their "FDA disclosures" are incomplete because they fail to inform consumers that the FDA has explicitly stated,

- 18 -

24cv0397

through warning letters and other actions, that these products are misbranded and should not be marketed, sold, or distributed in the United States. (*Id.* at 6:17–7:2.) Finally, with respect to the "unfair" prong, they argue that it is preempted "to the extent the 'unfair conduct' prong of NJOY's UCL claim is based on Defendants' alleged violation of FDA regulatory requirements." (*Id.* at 6:11–15.)

Consequently, the Court limits its preemption analysis to Online Retailer and Manufacturer Defendants' alleged failure to disclose FDA-related information or comply with FDA regulatory requirements. The Court also addresses Brick-and-Mortar Retailer Defendants' argument below, specifically their contention that the FDCA preempts NJOY's UCL claim concerning California's flavor ban.

### a.    Packaging and Labeling

The Court finds that NJOY's UCL claim under the unlawful, unfair, and fraudulent prongs is preempted to the extent it alleges deficiencies in the inclusion or omission of information on Elf Bar Product labels, as such claims would impose additional or different labeling requirements prohibited by the TCA.

By the express terms of 21 U.S.C. § 387p(a)(2)(A), no State can impose "any requirement which is different from, or in addition to" the FDA's requirements regarding "labeling." The definition of "labeling" is found elsewhere in the FDCA. According to the definitions used throughout the FDCA, "[t]he term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). Moreover, the term "label" is defined as:

> a display of written, printed, or graphic matter upon the immediate container of any article; and a requirement made by or under authority of this chapter that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper.

- 19 -

24cv0397

*Id.* § 321(k). Here, NJOY asserts that, "[i]n combination with other items on the product packaging, including FDA-mandated and California-mandated warning statements, the packaging for these products convey to consumers that the products may be sold legally in the United States and specifically in California." (Compl. ¶ 84.) For instance, NJOY alleges that Manufacturer Defendants displayed the statement "Sale only allowed in the United States" on product packaging, which NJOY notes is patently false and misleading "because sales of Elf Bar Products are not allowed in the United States." (*Id.* ¶¶ 80, 84.) Additionally, when tobacco products were purchased from the Manufacturer Defendants' website, NJOY claims "the shipping package did not include a label declaring the contents to be tobacco products." (*Id.* ¶ 87.) Similarly, when tobacco products were purchased from the websites of Defendants Empire Imports and Element Vape, the shipping packages also failed to include labels identifying the contents. (*Id.* ¶¶ 99, 108.)

Ultimately, NJOY's allegations here are premised on what is, and what is not, included on the product's label and are thus preempted by the TCA's prohibition on additional or different labeling requirements. The FDCA, as amended by the TCA, requires all tobacco product labels, packaging, and shipping containers to display the statement "Sale only allowed in the United States." 21 U.S.C. § 387t(a)(1). FDA regulations further mandate that tobacco product package labels include the warning, "WARNING: This product contains nicotine. Nicotine is an addictive chemical." 21 C.F.R. § 1143.3(a)(1). Consequently, NJOY's UCL claim under the unlawful, unfair, and fraudulent prongs is preempted to the extent it alleges deficiencies in the inclusion or omission of information on Elf Bar Product labels inconsistent with or exceeding those mandated federal law.

### b. Website Representations

However, NJOY also contends that Manufacturer Defendants directly marketed Elf Bar Products to U.S. consumers through their website, which offered specific information about Elf Bar FDVs. According to NJOY, the website characterized Elf Bar Products as

24cv0397

"certified safe for use," allegedly misleading consumers into believing that these products had satisfied FDA safety standards and obtained necessary regulatory approvals. (Compl. ¶ 82.) Additionally, NJOY asserts that the website promoted these products as part of a mission to "uphold the highest standards of legality, economics, and ethics," implying adherence to state and federal regulations. (*Id.* ¶ 83.)

NJOY also alleges that Online Retailer Defendants' websites included disclaimers implying that Elf Bar Products were legally authorized. (*Id.* ¶¶ 97, 102, 106.) For instance, Empire Imports' website states, "[w]e aim to deliver only the highest quality products" and describes the FDVs sold as "intended for adult smokers." (*Id.* ¶ 97.) Defendant SV3 LLC's website includes an FDA disclaimer noting, "[t]he efficacy of these products and the testimonials made have not been confirmed by FDA-approved research." (*Id.* ¶ 102.) Similarly, Defendant TheSy LLC's website includes a disclaimer stating, "statements made regarding these products have not been evaluated by the Food and Drug Administration." (*Id.* ¶ 106.) NJOY contends that the cumulative effect of these representations led consumers to believe that Elf Bar Products were not only safe but also legally authorized. (*Id.* ¶¶ 82, 126–27.)

The Court finds that the website representations made by Manufacturer Defendants and Online Retailer Defendants are not preempted, allowing NJOY to proceed with its UCL claim based on these allegations. The Court concludes that the language on these Defendants' websites does not constitute "labeling" under the FDCA, as none of the website content explains or supplements the tobacco products in a way that would generally be considered to "accompany" the products.

"[T]he answer to whether disclosures regarding a product on a 'website' constitutes labeling . . . would seem to be straight-forward." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 590 (N.D. Cal. 2020). The relevant statute defines "labeling" to mean "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). Here, the Court finds it difficult to see how the website language is

"accompanying" the product at issue.  *See Samet v. Procter & Gamble Co.*, 5:12-CV-01891 PSG, 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013) (questioning whether a website is "labeling"); *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1142 (N.D. Cal. 2013) (finding a website is not labeling).

With that said, "it is [also] true that statements not actually printed on a label itself can constitute 'labeling' for FDCA purposes." *Wilson*, 961 F. Supp. 2d at 1142.  The key consideration is whether the separate material serves the purpose of labeling, which is to supplement or explain the product.  *Kordel v. United States*, 335 U.S. 345, 349–50 (1950) ("One article or thing is accompanied by another when it supplements or explains it . . . No physical attachment one to the other is necessary. It is the textual relationship that is significant."); *see also United States v. Harkonen*, No. C 08–0164 MHP, 2009 WL 1578712, at *9 (N.D. Cal. June 4, 2009) (noting *Kordel* "remains the leading Supreme Court authority on the scope of the labeling provision").

Here, the language on Manufacturer Defendants' website is broad and general, describing Elf Bar Products in terms of overall qualities, such as being "certified safe for use," or highlighting that they "aim" to "uphold the highest standards of legality, economics, and ethics," without directly supplementing or explaining specific tobacco product characteristics. (Compl. ¶¶ 82–83.)  The website also includes statements such as Manufacturer Defendants' claim to "support strong laws and regulations that forbid minors from buying and using our products" and assurance that "ELFBAR products will be closely regulated to prevent misuse."  (*Id.* ¶ 83.)  Similarly, Empire Imports' website contains general representations like "[w]e aim to deliver only the highest quality products" and that the FDVs "sold on this site [are] intended for adult smokers."  (*Id.* ¶ 97.)  Based on this, the Court finds that the FDCA does not preempt these website representations.

Lastly, NJOY's allegations that the websites of Defendants SV3 LLC and TheSy, LLC feature FDA disclaimers that misleadingly suggest Elf Bar Products can be legally sold are not preempted. (*Id.* ¶¶ 102, 106, 126.)  These allegations address deceptive marketing and advertising practices rather than labeling requirements.  The TCA's

preservation clause expressly permits states to regulate advertising, promotion, and sales of tobacco products. Therefore, these allegations fall outside the scope of preemption.

### c.    California's Flavor Ban

The Court also considers Brick-and-Mortar Retailer Defendants' arguments that the FDCA preempts NJOY's claim because the sale and distribution of FDVs is "still within the purview of the FDA." (ECF No. 62 at 2:19–25.) The Ninth Circuit, however, has held that bans on flavored tobacco products, like California's flavor ban, are neither expressly nor impliedly preempted by the TCA as such bans regulate sales rather than impose product standards. *See R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 29 F.4th 542, 553–61 (9th Cir. 2022). The TCA's savings clause preserves state and local authority to regulate sales, including adopting measures "more stringent than" the TCA's requirements. *Id.* at 561. Moreover, because the TCA "does not mandate that certain flavors must remain available for sale . . . the [flavor ban] does not 'stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' expressed in the TCA." *Id.*

Thus, the Court rejects Brick-and-Mortar Retailer Defendants' argument because California's flavor ban, as a regulation of sales, falls within the state's preserved authority under the TCA's savings clause and does not conflict with federal regulatory objectives.

In sum, the Court holds that NJOY's UCL claim is preempted in part. The UCL claim cannot proceed to the extent it imposes requirements beyond federal labeling standards under the TCA, as labeling is expressly preempted by 21 U.S.C. § 387p(a)(2)(A). Allegations related to statements displayed on product packaging or labels, the omission of labels identifying shipped packages as containing tobacco products, or the failure to indicate on packaging or labels that the products lack FDA authorization and are therefore unlawful, misbranded, and not suitable for marketing, are preempted.

Moreover, the Court does not grant leave to amend because amendment would be futile. A court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "It is properly denied, however, if amendment would be futile." *Carrico*

24cv0397

*v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). The portion of NJOY's UCL claim imposing requirements beyond federal labeling standards under the TCA is expressly preempted by 21 U.S.C. § 387p(a)(2)(A), leaving no room for amendment to cure the preemption defect.

However, the UCL claim survives to the extent it relies on conduct or practices unrelated to labeling. More specifically, claims related to misleading website representations and California's flavor ban are not preempted. The disclaimers displayed on the websites of Online Retailer and Manufacturer Defendants do not constitute "labeling" as defined under the TCA, and the preservation clause allows states to regulate deceptive practices related to the advertising, promotion, and sale of tobacco products. Furthermore, California's flavor ban regulates sales, which is also preserved under the TCA's savings clause.

### B. UCL Claim

The UCL prohibits "any unlawful, unfair[,] or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The statute is "violated where a defendant's act or practice violates any of the [UCL's] prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). A plaintiff may pursue a claim under California's UCL via any or all of three prongs: the "unlawful" prong, which bars practices that are forbidden by any other law; the "unfair" prong, which bars unfair conduct; and the "fraudulent" prong, which bars practices that are likely to deceive the public. *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1100 (N.D. Cal. 2021).

NJOY claims that Defendants' conduct violated all three prongs of the UCL. (Compl. ¶¶ 118–29.) In their motions to dismiss, Defendants argue that the Complaint fails to adequately allege violations of any of these prongs. (Mot. 15:19–16:2.)

### 1. Unlawful Business Practices

The unlawful prong of the UCL "'borrows' violations of other laws and treats them as unlawful practices." *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1139 (S.D. Cal. 2012) (citations omitted). The unlawful prong includes business practices "forbidden by

- 24 -

24cv0397

law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1043–44 (9th Cir. 2010) (citation omitted).  Where a plaintiff cannot state a claim under a "borrowed" law, he or she cannot state a claim under the UCL's unlawful prong either.  *See, e.g.*, *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim.").

### i.    California's Flavor Ban

NJOY alleges that Defendants have engaged in unlawful conduct by distributing and selling FDVs, specifically Elf Bar Products, in violation of California's flavor ban. (Compl. ¶ 122(a).)  California Health & Safety Code § 104559.5 prohibits the sale of flavored tobacco products, including FDVs, at retail locations within the state. Online Retailer Defendants and Defendants Shenzhen iMiracle Technology Co., Ltd. and Imiracle (HK) Limited argue they cannot be held liable because the flavor ban only applies to in-person retail sales, and they do not engage in such sales in California.  (Mot. 16:18–17:4.)  However, NJOY contends that Defendants aid and abet the sale of these unlawful products by distributing them to California retailers.  (Compl. ¶ 123.)

Under California law, defendants may be liable even if they do not directly engage in the prohibited activity.  "[I]t is clear that section 17200 liability can be imposed for aiding and abetting a principal violator." *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1214 n.7 (C.D. Cal. 2006).  "Liability may be imposed on those who aid and abet another's violation of the UCL if the individual knows the other's conduct constitutes a violation and gives substantial assistance or encouragement to the other to so act." *Decarlo v. Costco Wholesale Corp.*, No. 14CV00202 JAH-BLM, 2020 WL 1332539, at *5 (S.D. Cal. Mar. 23, 2020).  Moreover, a complaint does not need to directly allege a defendant's knowledge to survive a motion to dismiss. *McCraner v. Wells Fargo & Co.*, No. 21-CV-1246-LAB-WVG, 2023 WL 2728719, at *4 (S.D. Cal. Mar. 30, 2023).  At trial, "actual knowledge can be inferred from . . . circumstances . . . such that the defendant 'must have

24cv0397

known.'" *Id.* (quoting *RSB Vineyards, LLC v. Orsi*, 15 Cal. App. 5th 1089, 1097–98 (2017)).    Likewise, a plaintiff can withstand a motion to dismiss by presenting circumstantial facts that, if proven, lead to the same inference. *Id.* However, allegations that merely suggest the defendant "should have known" are not enough. *Id.* (quoting *RSB Vineyards*, 15 Cal. App. 5th at 1098).

NJOY contends that "Defendants have engaged and continue to engage in unlawful conduct under the UCL by assisting, aiding, abetting, and supporting the unlawful conduct of other Defendants and entities that violated and continue to violate California's flavor ban." (Compl. ¶ 123.) Specifically, "Defendants' conduct when manufacturing, marketing, packaging, exporting and distributing Elf Bar Products directly assists and facilitates their sale to consumers at retail locations in California, including sales by the Brick-and-Mortar Retailer Defendants, and through online retailers that deliver products to consumers in California, including the Online Retailer Defendants." (*Id.* ¶ 81.)

Moreover, NJOY alleges that Online Retailer Defendants "distribute[] Elf Bar Products to other retailers." (*Id.* ¶¶ 96, 101, 105.)    NJOY claims Online Retailer Defendants "help ensure that Elf Bar Products manufactured and distributed by the Manufacturer Defendants reach end users and are therefore instrumental in preserving the market share for these unlawful and unfair products." (*Id.* ¶ 8.)    Furthermore, NJOY asserts that Manufacturer Defendants "knowingly export and distribute Elf Bar Products for sale to consumers in the United States and California in particular" and claim that the "sale of FDVs at California retail locations, which the Manufacturer Defendants facilitate and assist when distributing Elf Bar Products for sale in California, violates the state's ban on flavored tobacco products." (*Id.* ¶¶ 79, 4.)

Most pertinently, NJOY alleges Defendants engaged in these activities even though "[m]arketing, distributing and selling Elf Bar Products are [] contrary to federal law and the policies and actions of the federal [FDA]. No Elf Bar Product has received premarket authorization from [the] FDA. To the contrary, [the] FDA has repeatedly issued warning

letters over the last two years stating that Elf Bar Products are adulterated and misbranded and making clear that distribution and sale of these products are unlawful." (*Id.* ¶ 4.)

NJOY's Complaint notes that, as of February 26, 2023, the FDA had issued over 60 warning letters indicating that Elf Bar Products were being sold without the necessary marketing authorization order and had been misbranded. (*Id.* ¶ 67.) Furthermore, among those receiving warnings was Defendant Empire Imports, which was specifically cited on September 21, 2018, and again on May 31, 2023, due to its sales of unauthorized FDVs. (*Id.* ¶ 68.) Additionally, on May 17, 2023, the FDA issued an import alert targeting certain Elf Bar Products, stating that these products should be refused entry into the United States and detained without inspection due to their unlawful status. (*Id.* ¶ 69.) The FDA subsequently reiterated and updated the alert, further underscoring the agency's stance on the illegality of these imports. (*Id.*) NJOY notes that "[d]espite California's flavor ban and the FDA's repeated actions, the Manufacturer Defendants have continued to manufacture, market, and distribute Elf Bar Products for sale in the United States, including California." (*Id.* ¶ 5.)

Taken together, these allegations support a reasonable inference that Online-Retailer Defendants, along with Defendants Imiracle (HK) Limited and Shenzhen iMiracle Technology Co., Ltd., "must have known" distributing and selling FDVs were unlawful— including in violation of California's flavor ban—and that they provided substantial assistance to others engaging in this conduct. Brick-and-Mortar Retailer Defendants raise the same arguments as the Online Retailer Defendants did in their Rule 12(b)(1) motion, claiming that NJOY lacks standing, cannot show injury in fact, and is not entitled to restitution. (ECF No. 57 at 2:4–15.) These arguments are unpersuasive in the context of a Rule 12(b)(6) motion. NJOY pleads that Brick-and-Mortar Retailer Defendants operate retail stores where they each sold FDVs in violation of the California Flavor Ban. (Compl. ¶¶ 90–95.)

Taking NJOY's allegations as true, as required at this stage, the Court finds that NJOY has sufficiently pleaded that Defendants' conduct constitutes either direct violations

24cv0397

or aiding and abetting violations of the California Flavor Ban.  This is sufficient to sustain a claim under the unlawful prong of the UCL.

### ii.    Consumer Legal Remedies Act

The Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).  Specifically, NJOY alleges that Defendants violated the provision of the CLRA that prohibits misrepresenting "the source, sponsorship, approval, or certification of goods" or representing "that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." *Id*. § 1770(a)(2), (5).

NJOY's UCL claim predicated upon the CLRA is evaluated using the "reasonable consumer" test, which requires showing that "members of the public are likely to be deceived" by the defendant's conduct. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  The reasonable consumer test requires more than a mere possibility that the representations "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Rather, it requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Importantly, the California Supreme Court has recognized "that these laws prohibit 'not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)).  Thus, "[t]he touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023).

24cv0397

Nonetheless, whether the defendant's practices are deceptive is usually a question of fact that is not appropriate for determination at the motion to dismiss stage. *See Williams*, 552 F.3d at 938–39 (9th Cir. 2008). Indeed, the Ninth Circuit has made clear that granting a motion to dismiss on this question will only be appropriate in "rare situation[s]." *Id.* at 939.

Here, NJOY alleges that Online Retailer and Manufacturer Defendants made partial and misleading statements on their websites, which conveyed the false impression that Elf Bar Products complied with federal and state laws. (Compl. ¶¶ 96–97, 101–06, 126.) Specifically, NJOY argues that the websites of Defendants Mi-One and Element Vape feature FDA disclaimers indicating that the FDA has not reviewed the products available on their platforms. (*Id.* ¶¶ 102, 106.) Additionally, NJOY contends the websites of Defendants Empire Imports and Element Vape include a California Proposition 65 warning, and that all three Online Retailer Defendants' websites provide shipping information that imply compliance with regulations. (*Id.* ¶¶ 97, 102, 106.) Similarly, NJOY notes Manufacturer Defendants' website also reinforces the impression that Elf Bar Products comply with regulatory standards, with statements such as "all our products are certified safe for use" and "ELFBAR products will be closely regulated to prevent misuse." (*Id.* ¶¶ 82–83.)

Taking NJOY's allegations as true and drawing all reasonable inferences in its favor, as the Court must at this stage, the Court finds that NJOY has satisfied the reasonable consumer test. The statements from Manufacturer and Online Retailer Defendants' websites could give rise to a misleading impression, potentially deceiving reasonable consumers into believing that the Elf Bar Products are legally authorized. However, the FDA has explicitly clarified—through warning letters and other enforcement actions—that it is unlawful to market, distribute, and sell FDVs, including Elf Bar Products specifically. (Compl. ¶¶ 66–69.) Defendants contend that their statements are factually accurate and that "merely placing a product on the market . . . does not imply that the product is lawful." (Mot. 18:3–4, 19:3–17.) However, Online Retailer and Manufacturer Defendants'

- 29 -

24cv0397

websites include explicit claims that go beyond merely placing a product on the market, and courts have held that partial representations combined with omissions of material information can support a claim under the CLRA. *See Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1262–63 (2018). Ultimately, as the Ninth Circuit has emphasized, whether a reasonable consumer would be deceived is generally a question of fact, unsuitable for resolution on a motion to dismiss unless the alleged misrepresentation is so implausible as to be incapable of misleading. *See Williams*, 552 F.3d at 938–39.

The Court finds that the alleged misrepresentations are not so implausible as to be incapable of misleading reasonable consumers. Accordingly, the Court finds the Complaint sufficiently states a UCL claim relying on the CLRA.

### iii.    18 U.S.C. § 545

NJOY asserts that Defendants have violated, and continue to violate, 18 U.S.C. § 545, which prohibits "fraudulently or knowingly import[ing] or bring[ing] into the United States any merchandise contrary to law. . . ." (Compl. ¶ 122(c).) Initially, NJOY broadly claimed that "Defendants manufacture, market, distribute, import, and/or sell Elf Bar Products that have been and continue to be sold unlawfully and unfairly in the United States, including California." (*Id.* ¶ 77.) However, in its opposition brief, NJOY narrows these allegations, clarifying that it does not assert that Online Retailer Defendants directly imported Elf Bar Products into the United States, and therefore does not pursue this theory of liability against them. (Opp'n. 20 n.8; ECF No. 52 at 20–21 n.8.)

Nevertheless, NJOY alleges that "Manufacturer Defendants manufacture, market, and distribute Elf Bar Products. Upon information and belief, the Manufacturer Defendants knowingly export and distribute Elf Bar Products for sale to consumers in the United States and California in particular." (Compl. ¶¶ 78–79.) Furthermore, NJOY contends that Manufacturer Defendants' "conduct when manufacturing, marketing, packaging, shipping, and distributing Elf Bar Products for sale in the United States, including California, is unlawful and contrary to regulatory requirements. The sale of

24cv0397

FDVs at California retail locations, which the Manufacturer Defendants facilitate and assist when distributing Elf Bar Products for sale in California, violates the state's ban on flavored tobacco products." (*Id.* ¶ 4.) Furthermore, NJOY argues that the marketing, distribution, and sale of Elf Bar products also conflict with federal law and FDA policies as no Elf Bar Product has obtained premarket authorization from the FDA. (*Id.*) To the contrary, over the past two years, the FDA has consistently issued warning letters indicating that Elf Bar Products are adulterated and misbranded, emphasizing that their distribution and sale are illegal. (*Id.*) Lastly, NJOY alleges that "[u]pon information and belief, the Manufacturer Defendants have rebranded certain Elf Bar Products in an effort to avoid regulators, facilitate importation, and maintain their large share of the vapor product market." (*Id.* ¶ 85.)

As such, NJOY asserts a plausible UCL claim grounded in Manufacturer Defendants' alleged violation of 18 U.S.C. § 545.

However, with respect to Brick-and-Mortar Retailer Defendants, NJOY fails to plead with sufficient factual content that these defendants "fraudulently or knowingly import[] or bring[] into the United States any merchandise contrary to law" under 18 U.S.C. § 545. Although Brick-and-Mortar Retailer Defendants have not raised this issue, the Court, acting *sua sponte*, finds that NJOY's allegations do not meet the requisite standard to establish that these defendants have violated 18 U.S.C. § 545. NJOY's Complaint states that Brick-and-Mortar Retailer Defendants operate retail stores that allegedly sell FDVs in violation of California's ban on such products. (*Id.* ¶¶ 90–95.) Further, NJOY asserts that "Elf Bar Products are imported into the United States and distributed downstream—by importers and master distributors that have not yet been identified—into the hands of brick-and-mortar and online retailers . . . [who] unlawfully and unfairly sell these Elf Bar Products to consumers." (*Id.* ¶ 6.) This statement implies that Brick-and-Mortar Retailer Defendants are not involved in the act of importing FDVs into the United States; rather, they are part of selling directly to consumers.

24cv0397

If NJOY seeks to pursue a theory of liability against Brick-and-Mortar Retailer Defendants for violating the UCL under 18 U.S.C. § 545, it must provide sufficient factual allegations demonstrating their involvement in violating the statute.   Accordingly, the Court **GRANTS** Plaintiff an opportunity for leave to amend.

### iv.    The PACT Act

NJOY asserts that PACT Act Defendants have engaged in multiple violations related to the sale and distribution of Elf Bar Products to California consumers, including: (1) failing to comply with California laws applicable to cigarette sales, including e-cigarettes, as required by 15 U.S.C. § 376a(a)(3); (2) failing to adhere to shipping package and labeling requirements under 15 U.S.C. § 376a(b); (3) failing to meet age verification standards as mandated by 15 U.S.C. §§ 376a(b)(4) and (d); and (4) neglecting to register with the U.S. Attorney General and the State, and to file monthly reports, pursuant to 15 U.S.C. §§ 376(a)(1) and (2).  (Compl. ¶¶ 78–88, 96–116, 133.)

While PACT Act Defendants do not dispute that the Complaint provides sufficient details of their alleged PACT Act violations, they argue that Plaintiff does not establish the injury in fact necessary for Article III standing.  This argument is unpersuasive for reasons previously outlined.  Furthermore, the Court finds NJOY adequately states a UCL claim under the unlawful prong based on alleged PACT Act violations.

### 2.    Unfair Business Practices

"The UCL does not define the term 'unfair.' In fact, the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)).  The California Supreme Court lately noted that courts currently apply three different tests to analyze UCL unfairness claims, but the court did not approve or disapprove of any.  *Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County*, 462 P.3d 461, 472 n.10 (Cal. 2020).  First, there is a line of cases applying the "balancing test," which courts apply in the consumer context and requires courts to "weigh the utility of the defendant's conduct against the gravity of the

- 32 -

harm to the alleged victim." *Id.* at 471 n.9 (citation omitted).  Second, there are cases applying the "tethering test," particularly in the competitor context, which requires that the wrongfulness of the conduct at issue "be tethered to specific constitutional, statutory[,] or regulatory provisions"—or the policy or spirit of such a law—even if there may be no precise violation of those provisions.  *Id.* at 472 n.10 (citation omitted).  And third, there is the "section 5 test," which is drawn from that provision of the Federal Trade Commission Act, and which asks whether there is substantial injury to consumers that is not outweighed by countervailing benefits to consumers and competition and is of a character that consumers themselves could not have reasonably avoided.  *Id.*

In assessing NJOY's UCL claim under the "unfair" prong, the Court applies the "tethering" test established by the California Supreme Court, which prohibits courts from relying on "purely subjective notions of fairness" or questioning the "wisdom of any economic policy"—a domain reserved exclusively for the legislature.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999).  To succeed, NJOY, as a competitor alleging harm from Defendants' practices, must demonstrate that Defendants' conduct (1) "threatens an incipient violation of an antitrust law," (2) "violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law," or (3) "otherwise significantly threatens or harms competition." *Id.* at 187.  These findings must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186–87.  Importantly, unfair practices under this test are not limited to violations of existing antitrust laws.  *Id.* at 184.

Defendants argue that NJOY's UCL claim under the "unfair" prong should be dismissed for failing to allege antitrust violations such as "horizontal price fixing, exclusive dealing, or monopolization." (Mot. 21:25–26.)  The Court is unpersuaded by Defendants' argument because unfair conduct is not limited to antitrust violations, but also includes conduct that "otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns*, 20 Cal. 4th at 187.  And NJOY seeks to satisfy the tethering test by invoking this third option.  Furthermore, Defendants' reliance on *Epic Games, Inc. v. Apple, Inc.*,

- 33 -

559 F. Supp. 3d 898 (N.D. Cal. 2021), to argue that NJOY must allege harm to consumers is equally unpersuasive. (Reply 10:1–11.) In *Epic Games*, the court applied the balancing test because the plaintiff had standing as both a competitor and a quasi-consumer. This reasoning does not apply to NJOY, which acts solely as a competitor, making the tethering test the appropriate standard.

NJOY's allegations satisfy the "otherwise threatens or significantly harms competition" requirement under the tethering test. NJOY claims Defendants' marketing and sale of Elf Bar Products create an unfair marketplace by allowing non-compliant products to compete with law-abiding ones, thus harming competition. (Compl. ¶ 125.) Specifically, NJOY alleges that:

> Defendants' conduct allows and encourages consumers to purchase products that law-abiding manufacturers cannot sell while diverting consumers away from lawful products that satisfy regulatory requirements. Defendants' conduct thereby creates an unfair marketplace. Companies that abide by state law, seek and obtain premarket approval, and adhere to significant restrictions are forced to compete with companies that openly eschew state law and regulatory requirements and flout the FDA's clear direction not to market, distribute, or sell their specific products.

(*Id.*) Furthermore, these claims are "tethered" to evidence of harm, including alleged losses in market share for tobacco-flavored vapor products—such as the products NJOY manufactures—to FDV brands like Elf Bar Products. (*Id.* ¶¶ 71–75.) Therefore, NJOY has sufficiently alleged a cause of action under the UCL's unfairness prong by establishing a plausible theory of competitive harm that is tethered to proof of some actual or threatened impact on competition.

### 3.    Fraudulent Business Practices

To state a claim under the UCL's "fraudulent" prong, NJOY must prove that Defendants' allegedly fraudulent practices are ones in which "members of the public are likely to be deceived." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000). "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.'" *Puentes v. Wells Fargo*

- 34 -

24cv0397

*Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008) (quoting *Aron v. U–Haul Co. of California*, 143 Cal. App. 4th 796, 806 (2006); s*ee also Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (providing that the UCL and CLRA both apply the reasonable consumer test).

As noted above, however, Rule 9(b)'s heightened pleading standard applies to claims under the fraudulent prong of the UCL. *Kearns*, 567 F.3d at 1125. "To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). Most importantly, the complaint must explain "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso*, 637 F.3d at 1055. And to do so, the pleading cannot rely on hindsight; rather, it must explain "why the statements were false or misleading at the time they were made." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).

Here, the Court finds that NJOY has sufficiently pleaded its claims under the fraudulent prong of the UCL with the heightened specificity required by Rule 9(b). The Complaint details the "who, what, when, where, and how" of the alleged misconduct, naming specific defendants—including Manufacturer, Online Retailer, and Brick-and-Mortar Retailer Defendants—and outlining their respective roles in the manufacture, distribution, and sale of Elf Bar Products. (Compl. ¶¶ 18–33, 77–89.) NJOY alleges that "Defendants made express and implied statements on their websites, on packaging, and in advertisements stating and suggesting that Elf Bar Products were lawful products" and these statements were purportedly false and misleading. (*Id.* ¶ 126.) According to NJOY, Defendants failed to disclose "material information when marketing, distributing, and selling Elf Bar Products," including that the "FDA has made expressly clear through warning letters and other actions that these products have been misbranded and should not be marketed, sold, or distributed in the United States" as well as violate California's flavor ban. (*Id.* ¶¶ 4, 126.) The alleged fraudulent conduct occurred during the marketing, sale,

24cv0397

and distribution of Elf Bar Products across California and the United States, as detailed in specific transactions involving Defendants' products. (*Id.* ¶¶ 77–108.) NJOY identifies specific misrepresentations made by Defendants, including statements on the Elf Bar website such as "ELFBAR products will be closely regulated to prevent misuse" and that the products are "certified safe for use." (*Id.* ¶¶ 82–83.) These allegations satisfy Rule 9(b) by providing sufficient detail to place Defendants on notice of the claim and allow them to prepare a defense.

Additionally, "[o]missions may be the basis of claims under California consumer protections laws, but 'to be actionable the omission must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)). A failure to disclose can constitute actionable fraud in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).

Furthermore, "a fact is deemed 'material,' and obligates [a] . . . defendant to disclose it, if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue." *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011) (citing *Engalla v. Permanente Medical Group, Inc.* 15 Cal. 4th 951, 977 (1997)). "In other words, a defendant has a duty to disclose when the fact is known to the defendant and the failure to disclose it is 'misleading in light of other facts . . . that [the defendant] did disclose.'" *Gutierrez*, 19 Cal. App. 5th at 1258 (quoting *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1382 (2012)).

Here, NJOY's claim, which is effectively a fraud-by-omission claim, is similarly well-pleaded. NJOY alleges that Defendants knew that Elf Bar Products were unlawful

1  under federal and state law. (*Id.* ¶¶ 66–70, 85.) NJOY contends that Defendants failed to

2  disclose this information while simultaneously making partial representations on websites,

3  packaging, and in advertisements, including FDA-disclaimers, California-mandated

4  warning statements, and other representations suggesting compliance with state and federal

5  law. (*Id.* ¶¶ 82–85, 96–108, 126.) NJOY alleges that these partial representations were

6  misleading due to the omission of material information indicating that the products were

7  misbranded and should not be marketed, sold, or distributed. (*Id.* ¶ 126.) As a result,

8  consumers were misled into believing that Elf Bar Products "may be sold legally in the

9  United States and specifically in California." (*Id.* ¶ 84.) NJOY contends that "[a]dult

10 consumers have purchased and continue to purchase Elf Bar Products instead of lawful

11 products like tobacco-flavored NJOY Daily and ACE, causing [it] to suffer lost sales, lost

12 profits, and other economic harm. This harm is the direct result of the Defendants'

13 unlawful, unfair, and fraudulent conduct—without which Elf Bar Products could not be

14 sold. . . ." (*Id.* ¶ 13.)

15     Defendants argue that NJOY has failed to plausibly plead the "fraudulent" prong of

16 the UCL claim. (Mot. 23:15–21.) However, upon review, the Court disagrees. The Court

17 finds that NJOY has adequately alleged a claim under the fraudulent prong of the UCL and

18 has supported it with detailed and specific factual allegations that meet the heightened

19 pleading requirements of Rule 9(b).

20     As such, Defendants' motions to dismiss under Rule 12(b)(6) are **GRANTED IN**

21 **PART** and **DENIED IN PART**.

22                    **CONCLUSION**

23     Accordingly, the Court **DENIES** Defendants' Motions to Dismiss for lack of subject

24 matter jurisdiction under Rule 12(b)(1). The Court finds that NJOY has adequately alleged

25 Article III standing. Defendants' motions to dismiss under Rule 12(b)(6) are **GRANTED**

26 **IN PART** and **DENIED IN PART** as follows:

27     1. NJOY's UCL claim, insofar as it is based on alleged deficiencies in product

28        labeling—including claims related to statements on product packaging or labels,

24cv0397

the omission of labels identifying packages as containing tobacco products, or the failure to indicate on packaging or labels that the products lack FDA authorization and are therefore unlawful, misbranded, and unsuitable for marketing—is **DISMISSED WITH PREJUDICE** as preempted by the Family Smoking Prevention and Tobacco Control Act of 2009.

2. NJOY's UCL claim against Brick-and-Mortar Retailer Defendants, based on 18 U.S.C. § 545, is **DISMISSED WITHOUT PREJUDICE**, with leave to amend.

3. Defendants' motions to dismiss under Rule 12(b)(6) are **DENIED** in all other respects. NJOY has sufficiently alleged plausible claims under the UCL's unlawful, unfair, and fraudulent prongs as well as the PACT Act. NJOY's UCL claim may move forward to the extent it is based on conduct or practices unrelated to product labeling. Specifically, claims related to misleading website representations and California's flavor ban are not preempted and may proceed.

If NJOY wishes to amend its Complaint to address the deficiency identified above, it must do so on or before **January 3, 2025**.  Defendants shall file their answer or any motion to dismiss the amended Complaint on or before **January 17, 2025**.  Should NJOY decide not to amend, Defendants shall file an answer to the existing Complaint on or before **January 17, 2025**.

**IT IS SO ORDERED.**

DATED: December 20, 2024

Hon. Cynthia Bashant
United States District Judge

- 38 -

24cv0397