UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NJOY, LLC,<br><br>                         Plaintiff,<br><br>  v.<br><br>IMIRACLE (HK) LTD., *et al.*,<br><br>                       Defendants. | Case No. 24-cv-00397-BAS-JLB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF No. 21)** |

Presently before the Court is Plaintiff NJOY LLC's Motion for a Preliminary Injunction, seeking to enjoin Defendants Aroma Avenue Vape Shop, Cigarettes N More, Cloudhaven Vapors, Inc., and Z Vapor Room ("Brick-and-Mortar Retailer Defendants") from selling Elf Bar Products and other flavored disposable vaping devices ("FDVs"). Brick-and-Mortar Retailer Defendants oppose the motion. (ECF No. 41.) After reviewing the parties' submissions, relevant legal authority, and the record in this matter, the Court **GRANTS** Plaintiff's Motion for a Preliminary Injunction. (ECF No. 21.)

I.     BACKGROUND

NJOY is a manufacturer and distributor of tobacco-flavored electronic nicotine delivery systems ("ENDS"), including its two brands of e-cigarettes, NJOY Daily and NJOY ACE. (Compl. ¶ 9, ECF No. 1.) The Food and Drug Administration ("FDA") has

granted market authorization for NJOY's tobacco-flavored products following a rigorous scientific review process. (*Id.* ¶ 10.) Unlike many FDV manufacturers, NJOY invested significant funds and resources over several years to submit FDA premarket authorization applications for its NJOY Daily and NJOY ACE products. (Graham Decl. ¶¶ 5, 12–14, ECF No. 21-3.) NJOY submits the Declaration of Mr. David Graham, former Chief Impact Officer and Executive Vice President of Regulatory Affairs, detailing the company's product lines, FDA marketing applications, and the FDA's authorization of its tobacco-flavored products. (*Id.* ¶¶ 5–18.) The exhibits attached to his Declaration include the FDA marketing granted orders and technical project lead reviews for NJOY Daily and NJOY ACE, demonstrating the company's compliance with FDA's regulatory requirements and scientific review process. (*Id.* Exs. A–D.) The bottom line is that NJOY's tobacco-flavored products are fully authorized for legal sale in the United States. (*Id.* ¶ 5.)

In contrast with NJOY's products, the FDA has repeatedly made it clear via numerous warning letters that FDVs are unlawful to market, distribute, and sell in the United States. (ECF No. 21-1 at 5 n.15.) FDVs are a subset of electronic nicotine delivery systems ("ENDS") that feature flavored contents and disposable designs. (*Id.* at 1 n.4.) They include the highly popular "Elf Bar Products" that are at issue in this case and are sold under the brand names Elf Bar, EB Create, EB Design, Lost Mary, Funky Republic, and Funky Lands ("Elf Bar Products"). (Harvey Decl. ¶ 62, ECF No. 21-4.) According to NJOY, Brick-and-Mortar Retailer Defendants operate retail businesses in Southern California where they sell FDVs. (ECF No. 21-1 at 6:11–8:2.) Furthermore, Brick-and-Mortar Retailer Defendants' retail sales violate California's flavor ban, which prohibits the sale of flavored tobacco products at retail locations in California under California Health and Safety Code § 104559.5.

NJOY submits the Declaration of Mr. John Connolly, detailing multiple undercover purchases of FDVs at Southern California retail locations operated by Brick-and-Mortar Retailer Defendants, in violation of California's flavor ban. (Connolly Decl. ¶¶ 7–11, ECF No. 21-5.) Mr. Connolly, an expert in investigating illicit consumer products such as

contraband tobacco, and his team conducted these purchases on February 1 and February 21, 2024. (*Id.*) Exhibits attached to Connolly's Declaration provide photographic evidence of these illicit FDV purchases. (*Id.* Exs. A–H.)

NJOY asserts that it suffers lost sales, reduced profits, and other economic harm as consumers opt for FDVs over its lawful alternatives. (Compl. ¶ 13.) It contends that unauthorized FDV products unfairly compete in the market by bypassing regulatory compliance, placing NJOY at a significant disadvantage despite its adherence to state and federal law. (*Id.* ¶¶ 127–28.) Furthermore, NJOY avers that these illegal sales harm its business by diverting customers from its FDA-approved tobacco-flavored products, undermining the value of its regulatory investments, and causing a loss of market share and revenue. (*Id.* ¶¶ 11, 13, 71–76.)

NJOY presents evidence, including the Declaration of R. Garrison Harvey, a statistician and applied mathematician who opines that Elf Bar Products have caused and will continue to cause NJOY to lose sales of its tobacco-flavored products. (Harvey Decl. ¶¶ 1, 9.) In his analysis, Mr. Harvey finds that Elf Bar Products hold a significant market share for vapor products—"in the range of about one-third to a half." (*Id.* ¶ 71.) Mr. Harvey also concludes that "the availability of FDVs is associated with NJOY lost sales" and "there is a reliable basis to further illustrate that the continued availability of FDVs, and Defendant's FDVs, would be associated with NJOY lost sales." (*Id.* ¶ 9.) Mr. Harvey estimates that the presence of FDVs in the market, a substantial portion of which are Elf Bar Products, has caused NJOY to incur annual retail sales losses ranging from $16.1 million to $147.5 million. (*Id.* ¶ 60.)

NJOY commenced this action on February 28, 2024, against multiple defendants alleged to be involved in the manufacture, distribution, and sale of FDVs, asserting claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., and the Prevent All Cigarette Trafficking Act of 2009 ("PACT Act"), 15 U.S.C. § 375 et seq. NJOY subsequently filed a Motion for Preliminary Injunction seeking to enjoin a subset of these defendants—identified as Brick-and-Mortar Retailer Defendants—along

with their officers, directors, agents, employees, and any persons acting in concert with them, from selling Elf Bar Products and other FDVs within California. (ECF No. 21 at 2:3–15.) NJOY argues that the injunction is necessary to halt the unlawful and unfair conduct of Brick-and-Mortar Retailer Defendants and to prevent further harm to its business through lost sales and market share. (ECF No. 21-1 at 2:1–4.)

NJOY also presents evidence indicating that monetary recovery from Brick-and-Mortar Retailer Defendants is unlikely, citing Dunn and Bradstreet reports that highlight their limited financial resources and relatively brief operational histories. (Wulfe Decl. Exs. 20–23.) To this point, Brick-and-Mortar Retailer Defendants indicate that Cloudhaven Vapors, Inc. has ceased operations, and that Z Vapor Room is similarly in the process of shutting down. (ECF No. 134 at 4:2–8.)

On December 17th, 2024, the Court held oral argument, during which the parties presented their arguments concerning the preliminary injunction.[1] (ECF No. 145.)

## II.   LEGAL STANDARD

"The Supreme Court has emphasized that preliminary injunctions are an 'extraordinary remedy never awarded as of right.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). A preliminary injunction should not be granted unless the movant shows "substantial proof . . . [and] '*by a clear showing*, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (footnotes omitted) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948, at 129–30 (2d ed. 1995)). A movant seeking a preliminary

---

[1] Brick-and-Mortar Retailer Defendants raised the issue of subject matter jurisdiction for the first time during oral argument. (ECF No. 145.) The Court finds it has original jurisdiction under the PACT Act and supplemental jurisdiction over the related state law claim pursuant to 28 U.S.C. § 1367(a), as the claim arises from the same case or controversy. Brick-and-Mortar Retailer Defendants are alleged to play a significant role in the unlawful conduct by selling Elf Bar Products to consumers. (Compl. ¶ 89.)

injunction "must satisfy *Winter's* four-factor test." *Garcia*, 786 F.3d at 740 (citing *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012)).

"Under *Winter*, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). The party seeking the injunction bears the burden of proof as to each of these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

Moreover, courts in the Ninth Circuit may consider the *Winter* factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). Nonetheless, the "[l]ikelihood of success on the merits 'is the most important' *Winter* factor[.]" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Garcia*, 786 F.3d at 740).

### III.  ANALYSIS

#### A.  Type of Injunction

The Court, exercising its inherent authority, must first ascertain whether the injunction sought by NJOY is prohibitory or mandatory in nature. This determination is necessary in identifying the applicable legal standard. "A prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quoting *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988)). The status quo refers to the last uncontested status that preceded the controversy. *N.D. ex rel. Parents v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010). Put differently, the status quo is the "legally relevant relationship between the

parties before the controversy arose." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (emphasis omitted).

By comparison, a mandatory injunction "orders a responsible party to 'take action.'" *Garcia*, 786 F.3d at 740 (quoting *Marlyn*, 571 F.3d at 879). This second type of injunction "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Id.* (alteration in original) (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)). Hence, the standard for a mandatory injunction is "doubly demanding" and requires showing the law and facts "*clearly favor*" the movant's position, and "not simply that [the movant] is likely to succeed." *Id.* (emphasis in original).

Here, NJOY petitions the Court to enjoin Brick-and-Mortar Retailer Defendants from selling Elf-Bar Products and other FDVs. (ECF No. 21-1 at 2:1–4.) Although framed as a prohibition on future sales, the requested relief compels affirmative action—specifically, the removal of products from store shelves. This does not preserve the "last uncontested status" preceding the controversy, as a prohibitory injunction would. Before this litigation, Brick-and-Mortar Retailer Defendants routinely sold Elf-Bar Products and other FDVs. Instead, the relief sought requires them to "take action" by removing products, rendering the injunction mandatory. Accordingly, NJOY bears the heightened burden of demonstrating that the law and facts clearly favor its position. The Court, therefore, evaluates NJOY's request under this exacting standard.

**B.   Success on the Merits**

NJOY seeks to enjoin Brick-and-Mortar Retailer Defendants' conduct under the UCL. The Court finds the law and facts clearly favor NJOY's position.

The UCL prohibits "unfair competition," which is broadly defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Its scope is expansive:

> [T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such

- 6 -

24cv0397

> activity might occur. Indeed, . . . the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable "new schemes which the fertility of man's invention would contrive."

*Cel-Tech Commn'cs, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 165 (1999) (quoting *American Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 698 (1935)); *see also* Cal. Bus. & Prof. Code § 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."). NJOY contends Brick-and-Mortar Retailer Defendants' conduct should be enjoined both because it is "unlawful" and because it is "unfair" under the UCL's three pronged approach.

First and foremost, unlawful conduct occurs when a defendant "engage[s] in a business practice 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (quoting *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838–39 (1994)); *see also, e.g.*, *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155 (2018) ("[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for [an] . . . 'unlawful' [prong] violation."). Thus, the unlawful prong of the UCL "'borrows' violations of other laws and treats them as unlawful practices." *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1139 (S.D. Cal. 2012) (citations omitted). Where a plaintiff cannot state a claim under a "borrowed" law, he or she cannot state a claim under the UCL's unlawful prong either. *See, e.g.*, *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim.").

NJOY's UCL claim under the "unlawful" prong borrows from California's flavor ban. California Health and Safety Code § 104559.5 prohibits the sale of flavored tobacco products, including FDVs, at retail locations within the state. The statute makes it illegal to sell any "flavored tobacco product or a tobacco product flavor enhancer." Cal. Health

& Safety Code § 104559.5(b)(1). A "flavored tobacco product" is one "that contains a constituent that imparts a characterizing flavor." *Id.* § 104559.5(a)(4). A "characterizing flavor" is "a distinguishable taste or aroma, or both, other than the taste or aroma of tobacco, imparted by a tobacco product or any byproduct produced by the tobacco product." *Id.* § 104559.5(a)(1).

The law further defines a "tobacco product" as any "product containing, made, or derived from tobacco or nicotine." *Id.* § 104495(a)(8)(i). NJOY demonstrates that Brick-and-Mortar Retailer Defendants sell Elf-Bar Products and other FDVs, which are categorized as ENDS and commonly referred to as vapor products. (ECF No. 138 at 2:13–3:17.) These products are characterized by their flavored content and disposable design, in addition to their ability to deliver nicotine. (ECF No. 21-1 at 1 n.4.) California law, therefore, unambiguously prohibits the in-person retail sale of FDVs, including Elf-Bar Products.

In support of its position, NJOY offers the Declaration of Mr. Connolly to demonstrate specific instances in which Brick-and-Mortar Retailer Defendants sold Elf-Bar Products out of their retail stores. (Connolly Decl. ¶¶ 7–11.) Moreover, NJOY submits sales records produced by Brick-and-Mortar Retailer Defendants, demonstrating that they have distributed thousands of Elf Bar Products and other FDVs, actions that directly contravene California's flavor ban. (ECF No. 138 at 2:13–3:17.) Additionally, the submitted purchase records indicate that Brick-and-Mortar Retailer Defendants have acquired thousands of Elf Bar Products and FDVs, which they ostensibly plan to sell. (*Id.* at 2:8–10.) Accordingly, the UCL is broadly construed to prohibit ongoing unlawful practices, including the actions of Brick-and-Mortar Retailer Defendants that directly violate state law.

Furthermore, NJOY argues that the conduct of Brick-and-Mortar Retailer Defendants should be enjoined because it is also "unfair" under UCL's three-pronged approach. "Unfair" conduct is defined as that which "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are

comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. NJOY alleges that Brick-and-Mortar Retailer Defendants' conduct "allows and encourages consumers to purchase products that law-abiding companies cannot sell while diverting them away from lawful products." (ECF No. 21-1 at 12:5–7.) NJOY avers that when companies like Brick-and-Mortar Retailer Defendants disregard rules and regulations, including state laws and FDA premarket authorization requirements, it places law-abiding competitors at a significant disadvantage, fostering an unfair and uneven playing field in the marketplace, thus undermining fair business competition. (*Id.* at 12:7–12.)

Moreover, NJOY asserts standing to bring its UCL claim, contending that it has experienced a loss of sales and market share, thereby satisfying the requirements of having "suffered injury in fact" and "lost money or property as a result of unfair competition," pursuant to California Business and Professions Code § 17204. (*Id.* at 12:13–28.) In support, NJOY submits the Declaration of Mr. Harvey, who concludes that "the availability of FDVs is associated with NJOY lost sales" and "there is a reliable basis to further illustrate that the continued availability of FDVs, and Defendant's FDVs, would be associated with NJOY lost sales." (Harvey Decl. ¶ 9.) NJOY also provides market data that demonstrates an increase in the market share of flavor products and a corresponding decrease in the share of tobacco-flavored products. (ECF No. 21-1 at 10:4–11; Wulfe Decl. Ex. 8.) Similar data indicates that FDVs, including Elf Bar Products, have captured and continue to capture market share in California at the expense of tobacco-flavored products. (ECF No. 21-1 at 10:11–13; Wulfe Decl. Ex. 19.)

In opposing NJOY's motion for a preliminary injunction, Brick-and-Mortar Retailer Defendants effectively reject the notion that consumers would shift to NJOY's tobacco-flavored products in the absence of Elf Bar Products and FDVs. Brick-and-Mortar Retailer Defendants contend that it is "unclear that a favorable result for the preliminary injunction will affect California consumers who will want to use certain brands of [FDVs]. There are many brands from which to choose other than the Plaintiff's products . . . ." (ECF No. 41

at 3:10–16.) To support their argument, they cite the First Amended Complaint from prior litigation in *NJOY, LLC v. iMiracle (HK) Limited, et al.*, No. CV 23-08798 TJH (SSCx) (C.D. Cal. filed Jan. 18, 2024), where NJOY alleged irreparable harm from non-Elf Bar FDV brands—Hyde, Esco Bar, Puff Bar, Hyppe, and SWFT. Brick-and-Mortar Retailer Defendants argue this assertion "undermines the allegation that Elf Bar users would flock to Plaintiff's tobacco vaping products if the Court enjoins the sale of Elf Bar FDVs." (*Id.* at 4:12–16.)

Brick-and-Mortar Retailer Defendants also dispute the notion that consumers would shift to NJOY's tobacco-flavored products, arguing there is not a "substantial likelihood" that consumers would transition to Plaintiff's tobacco-flavored products because NJOY's products lag R.J. Reynolds' "Vuse" brand and JUUL brand products. (*Id.* at 4:21–5:6.) Lastly, Brick-and-Mortar Retailer Defendants argue that while NJOY's expert, Mr. Harvey, suggests that eliminating all FDVs could increase NJOY's sales, he does not address the specific impact of removing only Elf Bar FDVs, suggesting the absence of this evidence implies no such increase would occur in NJOY's sale of tobacco flavored vaping products. (*Id.* at 5:8–18.)

The Court disagrees with the position of Brick-and-Mortar Retailer Defendants. As detailed in the Court's Order addressing the broader set of Defendants' Motions to Dismiss, the argument that NJOY cannot demonstrate redressability through an injunction—on the basis that consumers would not switch products—is unconvincing. (ECF No. 146.) For the purposes of this motion, NJOY has satisfied its evidentiary burden by providing evidence of Brick-and-Mortar Retailer Defendants' violations and the resulting economic injury, supported by the declarations of Mr. Connolly and Mr. Harvey. In response to Brick-and-Mortar Retailer Defendants' argument that a preliminary injunction would not address NJOY's harms, NJOY highlights that Mr. Harvey's analysis finds that "the availability of FDVs is associated with NJOY lost sales" and "there is a reliable basis to further illustrate that the continued availability of FDVs, and Defendant's FDVs, would be associated with NJOY lost sales." (Harvey Decl. ¶ 9.)

1  Accordingly, the Court concludes that NJOY has demonstrated that the law and facts
2  clearly support its position. NJOY's claims under the unlawful and unfair prongs of the
3  UCL are substantiated by compelling evidence of Brick-and-Mortar Retailer Defendants'
4  violations, resulting competitive harm, and both current and future financial losses.

### C. Irreparable Harm

To obtain preliminary relief, NJOY must demonstrate that irreparable harm is likely in the absence of an injunction. *Winter*, 555 U.S. at 20, 22–23. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Brewer*, 757 F.3d at 1068 (citing *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). Moreover, "[a] preliminary injunction may only be granted when the moving party has demonstrated a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999).

The phrase "irreparable harm" is a term of art, meaning a party has suffered a wrong which cannot be adequately compensated by remedies available at law, such as monetary damages. *See eBay Inc. v. Merc Exchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974))).

Here, NJOY argues that Brick-and-Mortar Retailer Defendants' unlawful and unfair conduct constitutes an "immediate threatened injury" and allowing their conduct to continue will "allow additional sales of Elf Bar Products at the expense of tobacco flavored NJOY sales and cause [it] to lose further sales, market share, and profits." (ECF No. 21-1 at 13:3–8.) Furthermore, NJOY contends Brick-and-Mortar Retailer Defendants' conduct interferes with its ability to attract new adult consumers, leading to lost opportunities. (*Id.* at 13:13–15.) They cite to the Declaration of R. Garrison Harvey and his findings as well as additional market data to support these contentions. (*Id.* at 9:8–10:13; Harvey Decl. ¶¶

9, 60; Wulfe Decl., Exs. 8, 19.) Lastly, NJOY highlights Brick-and-Mortar Retailer Defendants' limited financial resources and relatively short operational histories, which suggest that even if a judgment were obtained, monetary relief might be unattainable. (ECF No. 21-1 at 13:21–14:3; Wulfe Decl., Exs. 20–23.)

At oral argument, Brick-and-Mortar Retailer Defendants noted that Cloudhaven Vapors, Inc. has ceased operations, and that Z Vapor Room is likewise in the process of shutting down. (ECF No. 145.) They further argued that Aroma Avenue Vape Shop and Cigarettes N More have produced records indicating sales only through June and July. (*Id.*)

Assuming, *arguendo*, that Brick-and-Mortar Retailer Defendants have indeed ceased the sale of Elf Bar Products and other FDVs, the Court finds that voluntary cessation is insufficient to demonstrate a lack of irreparable harm in this instance. Voluntary cessation of challenged conduct moots a case only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968). The "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Env'tl. Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). Here, Brick-and-Mortar Retailer Defendants have failed to meet this "heavy burden" with evidence presented in their filings or at oral argument.

NJOY has argued, and the Court agrees, that given the transient nature of operations in Brick-and-Mortar Retailer Defendants' industry, there is a considerable risk that they may resume sales or operations under a different name or corporate entity. (ECF No. 145.) The Court finds this concern to be reasonable. Ultimately, the Court is persuaded that NJOY has made a clear showing of irreparable harm absent injunctive relief. The immediate and ongoing financial losses, reduction in market share, and disruption in acquiring new customers—combined with Brick-and-Mortar Retailer Defendants' limited capacity to pay damages—strongly support the issuance of injunctive relief.

### D.  Balance of Equities

To qualify for injunctive relief, NJOY must show the balance of the equities tips in its favor. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Under the balance of equities analysis, a court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). In assessing whether NJOY meets its burden, the court has "a duty . . . to balance the interests of all parties and weigh the damage to each." *Los Angeles*, 634 F.2d at 1203.

Here, NJOY presents evidence indicating that it has invested substantial resources into the design, FDA market authorization, and marketing of its tobacco-flavored NJOY ACE and NJOY Daily products, demonstrating compliance with the law and regulatory requirements. (Graham Decl. ¶¶ 5–18, Exs. A–D.) In contrast, NJOY illustrates that Brick-and-Mortar Retailer Defendants are profiting from the sale of unlawfully marketed Elf Bar Products, which lack FDA premarket authorization and cannot be lawfully sold in California. (ECF No. 138 at 2:5–10.) Additionally, NJOY is correct to observe that the public has a significant interest in ensuring that marketplace products comply with legal and regulatory standards, particularly given the dangers associated with unregulated products. *See, e.g.*, *Smith v. People of the State of California*, 361 U.S. 147, 153 (1959) ("The usual rationale behind [food and drug legislation] is that the public interest in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors.").

As such, the Court finds that the balance of equities tips decisively in NJOY's favor. Brick-and-Mortar Retailer Defendants have no vested right to continue illegal activity and suffer no valid harm from an injunction that merely requires compliance with the law.

### E.  Public Interest

Finally, the Court concludes that issuing a preliminary injunction serves the public interest, as the public benefits from upholding the law and ensuring that parties fulfill their legal obligations. "[W]hen a prospective injunction would 'do no more than require

Defendant to comply with federal and state [] laws,' then the public has an interest in the enforcement of the statutes." *Dish Network L.L.C. v. Ramirez*, No. 15-CV-04712-BLF, 2016 WL 3092184, at *7 (N.D. Cal. June 2, 2016) (quoting *Dish Network, L.L.C. v. SatFTA*, No. 5:08-CV-01561 JF (PSG), 2011 WL 856268, at *8 (N.D. Cal. Mar. 9, 2011)). An injunction directing Brick-and-Mortar Retailer Defendants to comply with the applicable law advances this interest.

### F. Bond

Under Rule 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language," this rule grants the court discretion to determine "the amount of security required, *if any.*" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting the amount of the bond.").

Because "the purpose of . . . a bond is to cover any costs or damages suffered by the [party sought to be enjoined] arising from a wrongful injunction," *see Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000), "the party affected by the injunction [bears the] obligation of presenting evidence that a bond is needed," *see Conn. Gen.*, 321 F.3d at 883. *Accord Gorbach*, 219 F.3d at 1092 (affirming district court's decision not to require bond where the party sought to be enjoined "did not show that there would be any" damages); *see also Extreme Reach, Inc. v. Spotgenie Partners, LLC*, No. CV 13-07563-DMG (JCGx), 2013 WL 12081182, at *9 (C.D. Cal. Nov. 22, 2013) ("The burden of establishing the amount of bond necessary to secure against the wrongful issuance of an injunction rests with the [non-movant].").

Brick-and-Mortar Retailer Defendants have not affirmatively argued for the imposition of a bond in their response to NJOY's motion. (ECF No. 41.) While NJOY

does not oppose the posting of a reasonable bond, it asserts that Brick-and-Mortar Retailer Defendants have not established its necessity. (ECF No. 43 at 4 n.4.) At oral argument, Brick-and-Mortar Retailer Defendants likewise failed to provide any factual support regarding the need for a bond or the appropriate amount. (ECF No. 145.) Therefore, in the absence of probative or competent evidence showing that Brick-and-Mortar Retailer Defendants will suffer damages as a result of their compliance with the injunction, the Court will not require NJOY to post a bond under Federal Rule of Civil Procedure 65(c).

## IV. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** NJOY's Motion for a Preliminary Injunction. (ECF No. 21.)

Accordingly, until entry of final judgment in this action, the Court **ENJOINS** Defendants Aroma Avenue Vape Shop, Cigarettes N More, Cloudhaven Vapors, Inc., and Z Vapor Room, along with their officers, directors, agents, employees, and any persons or entities acting in concert with them, from selling Elf Bar Products and other flavored disposable vaping devices ("FDVs") within California. For the purposes of this injunction, Elf Bar Products include, but are not limited to, products sold under the brand names Elf Bar, EB Create, EB Design, Lost Mary, Funky Republic, and Funky Lands.

**IT IS SO ORDERED.**

DATED: December 20, 2024

Hon. Cynthia Bashant
United States District Judge